# EXHIBIT 5

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | | | |
|---|---|---|---|---|---|
| Title | : | AUTOMATIC UPLOAD OF PICTURES FROM A CAMERA | | | |
| Serial. No. | : | TBD | Confirmation No. | : | TBD |
| Applicant | : | Jeffrey C. Konicek | TC/A.U. | : | TBD |
| Filed | : | October 24, 2019 | Examiner | : | TBD |

| | | |
|---|---|---|
| Docket No. | : | Torpere-F04-514 |
| Customer No. | : | 107554 |

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

## <u>PRELIMINARY AMENDMENT</u>

Dear Sir:

**Amendments to the Specification** begin on page 2 below.

**Amendments to the Drawings** begin on page 3 below.

**Amendments to the Claims** begin on page 4 below.

**Applicant's Remarks** begin on page 7 below.

## <u>AMENDMENTS TO THE SPECIFICATION</u>

Applicant herewith submits a substitute specification including 1) a new TITLE of the invention, 2) a cross-reference to related applications, and 3) a brief description of the several views of the drawings as required by 37 CFR 1.74 and 1.77(b)(7).  The substitute specification is submitted with markings and accompanied by a clean version without markings in compliance with 37 CFR 1.52, 1.121(b)(3) and 1.125.  In accordance with 37 CFR 1.125(b), Applicant believes that the substitute specification contains no new matter.

## AMENDMENTS TO THE DRAWINGS

Please replace Figures 1, 2, 3, 4, and 5a-c with replacement Figures 1A, 1B, 2, 3, 4, 5A, 5B, and 5C.  The replacement figures are included on sheets 1/8 through 8/8 submitted herewith and identified as "Replacement Sheets."  Applicant believes that the replacement sheets contain no new matter.

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application.

1 – 20. (Canceled).

21. (New) A camera system comprising:

(a) a lens;

(b) a cellular interface;

(c) an image sensor that is coupled to the lens and operable to capture pictures;

(d) a non-volatile local memory that is coupled to the image sensor and operable to store pictures captured by the image sensor;

(e) a touch sensitive display;

(f) a controller coupled to the cellular interface, the non-volatile local memory and the touch sensitive display, and configured to:

(i) receive, via the touch sensitive display, a user selection of an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees;

(ii) automatically connect to a picture hosting service that is internet-based and enable an upload to the picture hosting service, over the internet and via the cellular interface, of a group of image sensor-captured pictures stored in the local memory, during any period detected by the controller in which all three of the following conditions are met:

(1) the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface,

(2) the system is connected to the internet via the cellular interface; and

(3) at least one image sensor-captured picture stored in the local memory has been designated through the touch sensitive display as part of the group of pictures to be uploaded to the picture hosting service.

22. (New) The camera system of claim 21, wherein the picture hosting service includes printing services.

4

23.  (New) The camera system of claim 21, wherein the controller is configured to automatically connect to the picture hosting service and enable the upload immediately at any time the three conditions are met.

24. (New) The camera system of claim 21, wherein the controller is configured to automatically independently connect to the picture hosting service and enable the upload.

25. (New) A camera system comprising:

(a) a lens;

(b) a cellular interface;

(c) an image sensor that is coupled to the lens and operable to capture pictures;

(d) a non-volatile local memory that is coupled to the image sensor and operable to store pictures captured by the image sensor;

(e) a touch sensitive display;

(f) a controller coupled to the cellular interface, the non-volatile local memory and the touch sensitive display, and configured to:

    (i) display on the touch sensitive display a user-selectable input that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees;

    (ii) automatically connect to a picture hosting service that is internet-based and enable an upload to the picture hosting service, over the internet and via the cellular interface, of a group of image sensor-captured pictures stored in the local memory, during any period detected by the controller in which all the following conditions are met:

        (1)  the controller has received from the display a selection of the user-selectable input that instructs the camera system to confine automatic picture uploads to periods without potentially increased cellular network access fees;

        (2) the controller has confirmed that the camera system is within a period without potentially increased cellular network access fees, as determined using data from the cellular interface;

        (3) the system has a connection to the internet via the cellular interface; and

(4) at least one image sensor-captured picture stored in the local memory has been designated through the touch sensitive display as part of the group of image sensor-captured pictures to be uploaded to the picture hosting service.

26. (New) The camera system of claim 25, wherein the picture hosting service includes printing services.

27.  (New) The camera system of claim 25, wherein the controller is configured to automatically connect to the picture hosting service and enable the upload at any time the conditions are met.

28. (New) The camera system of claim 25, wherein the controller is configured to automatically independently connect to the picture hosting service and enable the upload.

.

## REMARKS

In this preliminary amendment, Applicant has amended the title of the invention and the specification to cross-reference related applications.  Applicant has also amended the drawings to show the features of the invention specified in the claims.  In the claims, Applicant cancels claims 1 – 20 and adds new claims 21 – 28 (2 independent claims and 6 dependent claims).

Independent claims 21 and 25 are in condition for allowance for at least the same reasons that the Examiner recently issued the claims of related U.S. Patent Nos. 9,936,116 and 10,063,761 in this family.  For example, claim 21 element (f)(i) recites:

> "a controller… configured to… receive, via the touch sensitive display, a user selection of *an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees*."

(emphasis added).  And claim 21 (f)(ii) recites:

> "a controller… configured to… *automatically connect to a picture hosting service that is internet-based and enable an upload to the picture hosting service*, over the internet and via the cellular interface, of a group of image sensor-captured pictures stored in the local memory, during *any period detected by the controller in which all three of the following conditions are met*:
>
> (1) the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface,
>
> (2) the system is connected to the internet via the cellular interface; and
>
> (3) at least one image sensor-captured picture stored in the local memory has been designated through the touch sensitive display as part of the group of pictures to be uploaded to the picture hosting service."

(emphasis added).  Elements (f)(i) and (f)(ii) of independent claim 25 include similar limitations.

The claimed invention allows uploads to be turned off during periods with potentially increased cellular network access fees, yet the camera will *automatically* (1) connect and (2) enable upload to the picture hosting service of the group of pictures designated for upload in any period (*i.e.*, without regard to a specified time) *without* such fees.  The system avoids potentially increased cellular network access fees, such as fees associated with data roaming, but without the need for the user to set a timer or decide in advance a specific time for upload. When the conditions are met, the camera takes advantage of the opportunity to upload to the picture hosting service on the internet by immediately backing up valuable pictures. Applicant's disclosure at Paragraph 38 describes advantages of such a system while traveling:

In an enhancement to the above-disclosed embodiments of this aspect of the invention, the inventive camera system is operable for being instructed ***to automatically initiate a connection to the internet***, LAN, printer, etc. whenever the predetermined conditions are met and it is in range of the network connection, (e.g., WIFI, Bluetooth, wireless USB, wired LAN, etc). Once the transmittal of the pictures is complete, the inventive camera system preferably terminates the connection. Additionally, the inventive camera system is preferably operable so that the automatic connection is made only at certain times of the day or weekends, etc., ***so as to confine picture transmission to periods of low network usage or periods of cheaper network access, etc***....In the second embodiment above, the inventive camera system automatically connects to the internet preferably via WIFI, although cellular network, etc. connection is also contemplated, when it has a predetermined number of pictures and can so connect, and will send the pictures to virtually any internet destination without user intervention. For example, the inventive camera system can be instructed to automatically send the pictures to an email account, internet picture hosting site, web-based photo printing site, the user's internet-connected home computer (***when he is on vacation***, for instance), etc. ***In this way, valuable pictures are immediately backed-up*** and the need for reliance on expensive camera storage media like flash cards, SD, etc. is greatly reduced.

As explained in the information disclosure statement provided herewith, none of the references of record discloses or suggests "an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees."  Furthermore, none of the references describes, as a condition for upload, that the controller determines "the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface" and that the controller automatically enables upload of designated photos to the picture hosting service when this condition and the other conditions are met.  Thus, all of the pending claims are in condition for allowance for at least the same reasons that the Examiner recently issued the claims of the '116 and '761 patents in this family.

The remaining dependent claims are allowable as depending from the allowable independent claim and for their own additional limitations.

Applicant believes that no new matter has been added.  In addition, Applicant has taken care to prepare the claims in a manner that does not fall within 35 U.S.C. Section 112, Para. 6. Specifically, Applicant has undertaken to draft the claims in a manner that recites structure, material, or acts in support of the various operations.  Applicant requests that the Examiner inform Applicant if he believes that any claim falls within 35 U.S.C. Section 112, Para. 6, so that appropriate amendments can be made.

8

Applicant has also taken care to prepare the claims in compliance with 35 U.S.C. § 101 requiring claims to be directed to specific patentable subject matter.  Applicant requests that the Examiner inform Applicant if he believes any claim is directed to any unpatentable subject matter so that appropriate amendments can be made.

Applicant also expressly reserves the right to swear behind and antedate art references (including those references identified in the various Information Disclosure Statements filed herein) pursuant to 37 C.F.R. § 1.131.

In view of the above, Applicant believes that claims 21-28 are in condition for allowance. If the Examiner has any questions or believes an interview would expedite prosecution of this case, please contact the undersigned.

Respectfully Submitted,

/Justin J. Lesko/

Justin J. Lesko
Reg. No. 69,643

Dated: October 25, 2019

Law Offices of Steven G. Lisa, Ltd.
55 East Monroe Street Suite 3800
Chicago, IL 60603
Telephone: (773) 484-3285

*Attorney for Applicant*

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | | | |
|---|---|---|---|---|
| Title | : | AUTOMATIC UPLOAD OF PICTURES FROM A CAMERA | | |
| Serial. No. | : | 16/663,742 | Confirmation No. | : 3076 |
| Applicant | : | Jeffrey C. Konicek | TC/A.U. | : TBD |
| Filed | : | October 25, 2019 | Examiner | : TBD |

| | | |
|---|---|---|
| Docket No. | : | Torpere-F04-514 |
| Customer No. | : | 107554 |

**<u>INFORMATION DISCLOSURE STATEMENT & REMARKS</u>**

Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

Dear Sir:

Pursuant to 37 C.F.R. § 1.97 and § 1.98, to the assist the Examiner in carrying out his duty under MPEP § 707.05 to review the parent and related cases for potentially relevant art, Applicant has provided the information set forth below, which includes the last known Examiner and art unit for all known potentially-relevant and related cases so that the current Examiner may contact prior Examiners if desired.  In addition, Applicant has compiled the following:

1. **Table 1**, below, which details potentially-relevant and directly or indirectly related applications (along with all patents issued therefrom).

2. **Table 2**, below, which details references affirmatively cited by Examiners in support of a rejection in each application identified in Table 1.

3. **A Comprehensive Information Disclosure Statement**, Substitute Form SB/08 attached, which lists all references identified in the portfolio set forth in Table 1.

As stated in 37 C.F.R. § 1.97, the filing of this IDS is not and shall not be construed as an admission that the information cited in the statement is, or is considered to be, material to patentability as defined in § 1.56(b). Applicant further notes the references cited in this IDS may not qualify as prior art, and Applicant expressly reserves the right to antedate the cited references, as appropriate.

**TABLE 1**
**RELATED APPLICATIONS (AND PATENTS ISSUED THEREFROM)**

For the Examiner's convenience, and to assist him in complying with requirements of MPEP § 707.05 ("In all continuation and continuation in part applications, the parent applications should be reviewed for pertinent prior art"), Table 1 identifies all applications (and patents issued therefrom) filed by Applicant that may be considered directly or indirectly related to the current application, along with the Examiner's name and his/her art unit (at the time he/she handled the application):

| Table 1 | | | | |
|---|---|---|---|---|
| **Application Filing Date** | **Serial Number** | **Type** | **Status/ Patent Number** | **Examiner and Art Unit** |
| 10/17/2005 | 11/163,391 | Non-Provisional Utility | 7,697,827 (04/13/2010) | Rodney Fuller, 2862 |
| 02/22/2010 | 12/710,066 | Non-Provisional Utility | 7,933,508 (04/26/2011) | Rodney Fuller, 2862 |
| 04/15/2011 | 13/087,650 | Non-Provisional Utility | 8,467,672 (06/18/2013) | Rodney Fuller, 2862 |
| 12/17/2012 | 13/717,681 | Non-Provisional Utility | 8,831,418 (09/09/2014) | Rodney Fuller, 2852 |
| 03/06/2014 | 14/199,855 | Non-Provisional Utility | 8,824,879 (09/02/2014) | Rodney Fuller, 2852 |
| 03/10/2014 | 14/203,129 | Non-Provisional Utility | 8,818,182 (08/26/2014) | Rodney Fuller, 2852 |
| 06/26/2014 | 14/315,544 | Non-Provisional Utility | 8,897,634 (11/25/2014) | Rodney Fuller, 2852 |
| 08/06/2014 | 14/453,511 | Non-Provisional Utility | 8,923,692 (12/30/2014) | Rodney Fuller, 2852 |
| 09/25/2014 | 14/495,976 | Non-Provisional Utility | 8,917,982 (12/23/2014) | Rodney Fuller, 2852 |
| 11/12/2014 | 14/539,687 | Non-Provisional Utility | 9,485,403 (11/01/2016) | Rodney Fuller, 2852 |
| 02/05/2015 | 14/614,515 | Non-Provisional Utility | Pending | Rodney Fuller, 2852 |
| 11/24/2015 | 14/950,338 | Non-Provisional Utility | 10,257,401 (04/09/2019) | Rodney Fuller, 2852 |
| 11/24/2015 | 14/950,370 | Non-Provisional Utility | 10,063,761 (08/28/2018) | Rodney Fuller, 2852 |
| 06/21/2016 | 15/188,736 | Non-Provisional Utility | 9,936,116 (04/03/2018) | Rodney Fuller, 2852 |

2

**TABLE 2**
**REFERENCES RELIED UPON BY PRIOR EXAMINERS**
**IN RELATED APPLICATIONS**

Applicant has reviewed the file histories listed in Table 1 in order to identify and compile a listing of any reference that was affirmatively cited and relied upon by an Examiner in making a rejection. Those references are listed in Table 2 below. *Applicant cautions the Examiner that Applicant does not have official certified copies of the file histories for all of the applications listed in Table 1 and is relying on the documents available on PAIR. Accordingly, it is possible that Applicant may not have copies of all substantive office actions, and the Examiner is encouraged to review the related applications for completeness.*

| Table 2 | | | |
|---|---|---|---|
| **Reference** | **Date of Reference** | **Application(s) Containing Rejection(s)** | **Examiner(s) Issuing Rejection(s)** |
| U.S. 2005/0128311 – Rees et al. | Jun-05 | 11/163,391, 14/950,338, 15/188,736 | Rodney E. Fuller |
| U.S. 2006/0239672 – Yost et al. | Oct-06 | 11/163,391 | Rodney E. Fuller |
| U.S. 5,970,258 – Suda et al. | Oct-99 | 12/710,066 | Rodney E. Fuller |
| U.S. 5,245,381 – Takagi et al. | Sep-93 | 13/087,650 | Rodney E. Fuller |
| U.S. Pub. 2004/196399 – Stavely | Oct-04 | 13/087,650 | Rodney E. Fuller |
| U.S. 6,795,558 – Matsuo | Sep-04 | 13/087,650 | Rodney E. Fuller |
| U.S. Pub. 2005/0001024 – Kusaka et al. | Jan-05 | 13/717,681 14/203,129 | Rodney E. Fuller |
| U.S. Pub. 2004/0192421 – Kawahara | Sep-04 | 13/717,681 | Rodney E. Fuller |
| U.S. Pub. 2003/0090572 – Belz et al. | May-03 | 13/717,681 | Rodney E. Fuller |
| U.S. Pub. 2005/0195309 – Kim et al. | Sep-05 | 14/199,855 14/203,129 | Rodney E. Fuller |
| U.S. 5,027,149 – Hoshino et al. | Jun-91 | 14/199,855 14/203,129 | Rodney E. Fuller |
| U.S. Pub. 2007/0081090 – Singh | Apr-07 | 14/203,129 | Rodney E. Fuller |
| U.S. Pub. 2006/0099995 – Kim et al. | May-11 | 14/203,129 | Rodney E. Fuller |
| U.S. 5,570,151 – Terunuma et al. | Oct-96 | 14/539,687 | Rodney E. Fuller |
| U.S. Pub. 2002/0008765 – Ejima et al. | Jan-02 | 14/539,687 | Rodney E. Fuller |
| U.S. 4,081,623 – Vogeley | Mar-1978 | 14/539,687 | Rodney E. Fuller |
| U.S. Pub. 2005/0168579 - Imamura | | 14/950,338, 15/188,736, 14/950,370 | Rodney E. Fuller |
| U.S. Pub. 2008/0096587 - Rubinstein | | 14/950,338, 15/188,736 | Rodney E. Fuller |
| U.S. 5,923,908 – Schrock et al. | | 14/950,338, | Rodney E. Fuller |

| | | 15/188,736, 14/614,515 | |
|---|---|---|---|
| U.S. Pub. 2006/0041632 – Shah et al. | | 14/950,338, 15/188,736 | Rodney E.Fuller |
| U.S. Pub. 2006/0189349 – Montulli et al. | | 15/188,736 | Rodney E.Fuller |
| U.S. Pub. 2006/0097993 – Hietala et al. | | 15/188,736 | Rodney E.Fuller |
| U.S. Pub. 2006/0061663 – Park | | 14/614,515 | Rodney E.Fuller |
| U.S. Pub. 2006/0223503 – Muhonen et al. | | 14/614,515 | Rodney E.Fuller |
| U.S. 5,548,335 – Mitsuhashi et al. | | 14/614,515 | Rodney E.Fuller |
| U.S. Pub. 2006/0189348 – Montulli et al. | | 15/188,736 | Rodney E.Fuller |
| U.S. Pub. 2006/0114338 – Rothschild | | 15/188,736, 14/950,370 | Rodney E.Fuller |
| U.S. Pub. 2002/0005907 – Alten | | 14/614,515 | Rodney E.Fuller |
| U.S. Pub. 2003/0101052 – Chen et al. | | 14/950,338 | Rodney E.Fuller |
| U.S. 6,256,060 – Wakui | | 14/614,515 | Rodney E.Fuller |

## COMPREHENSIVE INFORMATION DISCLOSURE STATEMENT

The attached Substitute Form SB/08 is a comprehensive list of the references of record in the portfolio of patents and applications shown in Table 1, and also includes the prior office actions in related cases, Applicant's responses to those office actions, and the file histories of related cases. Applicant herewith files copies of the cited non-patent literature and the foreign references. Cite No. D004 is not included because Applicant does not have a copy of the reference.

Applicant further discusses the potential relevance of several references in the remarks below, including references cited by the Examiner during prosecution of related cases and references provided by prospective licensees.

### A. References Relied Upon by Examiners or Cited by Prospective Licensees

The following references were cited or relied upon by the Examiner in related cases for features relating to "automatic upload" of pictures to a remote pictures hosting site:

- U.S. Pub. 2006/0114338 – Rothschild (Cite No. B051);
- U.S. Pub. 2006/0189348 to Montulli et al. ("Montulli 1") (Cite No. B050);
- U.S. Pub. 2006/0189349 to Montulli et al. ("Montulli 2") (Cite No. B039);[1]

---

[1] Also alleged by a prospective licensee to disclose elements of related Patent: 10,063,761.

- U.S. Pub. 2003/0030731 to Colby (Cite No. B044);
- U.S. Pub. No. 2005/0001024 to Kusaka et al. ("Kusaka 2") (Cite No. B012);

Applicant received the following references from prospective licensees during prosecution of related cases, and Applicant also addressed these references in IDS filings in related cases:

- U.S. Provisional Application No. 60/718,155 to Feinberg et al. ("Feinberg") (Cite No. D052);
- Network Smart Capture Ver.1.2 (date unknown) (Cite No. D054);[2]
- Partial English Translation of Network Smart Capture Ver.1.2 (date unknown) ("Network Smart Capture") (Cite No. D055);

Applicant also recently received the following references from prospective licensees:

- U.S. Pub. No. 2004/0145660 to Kusaka et al. ("Kusaka 1") (Cite No. B069);[3]
- U.S. Pub. No. 2001/0010543 to Ward (Cite No. B067);
- U.S. Pub. No. 2004/0201738 to Moores (Cite No. B068);
- U.S. Pub. No. 2002/0051074 to Kawaoka (Cite No. B072);
- U.S. Pub. No. 2004/0070670 to Foster (Cite No. B074);
- PCT Pub. No. WO 2002/008860 to Anderson (Cite No. C040);
- U.S. Patent No. 5,737,491 to Allen et al. (Cite No. A083);[4]
- U.S. Pub. No. 2001/0030773 to Matsuura et al. (Cite No. B076);[5]
- U.S. Pub. No. 2004/0005915 to Hunter (Cite No. B077);[6]
- U.S. Pub. No. 2005/0001902 to Brogan et al. (Cite No. B078);[7]
- U.S. Pub. No. 2004/0061783 to Choi (Cite No. B079);[8]
- PCT Pub. No. WO 2004/052035 to Jung et al. (Cite No. C041);[9]

[2] Alleged to disclose elements of related Patent: 8,831,418 – Claim 21.

[3] Kusaka 1 was alleged to disclose elements of related Patents: 8,831,418 – Claim 21; 8,923,692 – Claim 1; 8,897,634 – Claim 1; and 10,063,761 – Claim 1. The prospective licensee also asserted that Rothschild combined with any of Kusaka 1, Ward, or Moores discloses features of the following related Patents: 8,831,418 – Claims 21, 23, 24; 8,923,692 – Claims 1, 3, 4; 8,897,634 – Claim 1.

[4] Alleged to disclose elements of related Patents: 8,923,692 and 10,257,401.

[5] Alleged to disclose elements of related Patents: 8,923,692, 10,063,761, and 10,257,401.

[6] Alleged to disclose elements of related Patents: 8,923,692 and 10,257,401.

[7] Alleged to disclose elements of related Patent: 10,063,761.

[8] Alleged to disclose elements of related Patent: 10,063,761.

- U.S. Patent No. 6,167,469 to Safai et al. (Cite No. A084).[10]

All of the pending claims of this application include important features that distinguish the above references. It is important to keep in mind that applicant's claimed inventions relate to cameras that are specially adapted for travel so that picture uploads on the go can occur automatically and at any time conditions are met, while avoiding potentially increased cellular network access fees associated with travel, such as data roaming fees.

Independent claims 21 and 25 (and their dependencies) are in condition for allowance for at least the same reasons that the Examiner recently issued the claims of the '116 and '761 patents in this family. For example, claim 21 element (f)(i) recites:

> "a controller… configured to… receive, via the touch sensitive display, a user selection of ***an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees***."

(emphasis added). And claim 21 (f)(ii) recites:

> "a controller… configured to… ***automatically connect to a picture hosting service that is internet-based and enable an upload to the picture hosting service***, over the internet and via the cellular interface, of a group of image sensor-captured pictures stored in the local memory, during ***any period detected by the controller in which all three of the following conditions are met***:
>
> (1) the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface,
>
> (2) the system is connected to the internet via the cellular interface; and
>
> (3) at least one image sensor-captured picture stored in the local memory has been designated through the touch sensitive display as part of the group of pictures to be uploaded to the picture hosting service."

(emphasis added). Elements (f)(i) and (f)(ii) of independent claim 25 include similar limitations.

The claimed invention allows uploads to be turned off during periods with potentially increased cellular network access fees, yet the camera will ***automatically*** (1) connect and (2) enable upload to the picture hosting service of the group of pictures designated for upload in any period (*i.e.*, without regard to a specified time) ***without*** such fees. The system avoids potentially increased cellular network access fees, such as fees associated with data roaming, but without the need for the user to set a timer or decide in advance a specific time for upload. When the

---

[9] Alleged to disclose elements of related Patent: 10,063,761.

[10] Alleged to disclose elements of related Patent: 9,936,116.

conditions are met, the camera takes advantage of the opportunity to upload to the picture hosting service on the internet by immediately backing up valuable pictures. Applicant's disclosure at Paragraph 38 describes advantages of such a system while traveling:

> In an enhancement to the above-disclosed embodiments of this aspect of the invention, the inventive camera system is operable for being instructed ***to automatically initiate a connection to the internet***, LAN, printer, etc. whenever the predetermined conditions are met and it is in range of the network connection, (e.g., WIFI, Bluetooth, wireless USB, wired LAN, etc). Once the transmittal of the pictures is complete, the inventive camera system preferably terminates the connection. Additionally, the inventive camera system is preferably operable so that the automatic connection is made only at certain times of the day or weekends, etc., ***so as to confine picture transmission to periods of low network usage or periods of cheaper network access, etc***....In the second embodiment above, the inventive camera system automatically connects to the internet preferably via WIFI, although cellular network, etc. connection is also contemplated, when it has a predetermined number of pictures and can so connect, and will send the pictures to virtually any internet destination without user intervention. For example, the inventive camera system can be instructed to automatically send the pictures to an email account, internet picture hosting site, web-based photo printing site, the user's internet-connected home computer (***when he is on vacation***, for instance), etc. ***In this way, valuable pictures are immediately backed-up*** and the need for reliance on expensive camera storage media like flash cards, SD, etc. is greatly reduced.

None of the references of record discloses or suggests "an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees." Furthermore, none of the references describes, as a condition for upload, that the controller determines "the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface" and that the controller automatically enables upload of designated photos to the picture hosting service when this condition and the other conditions are met. Thus, all of the pending claims are in condition for allowance for at least the same reasons that the Examiner recently issued the claims of the '116 and '761 patents in this family.

The automatic upload recited in each of the independent claims is also conditioned upon pictures being designated – the controller is configured to enable upload of the designated group of pictures if pictures are designated and the other conditions are met. This feature of the claims further distinguishes systems that only provide for uploading all stored pictures, as well as systems that upload each and every picture immediately in response to the picture being taken.

Applicant further discusses below the deficiencies of the references of record that

describe picture uploading.

### 1. Applicant's claims distinguish uploads that take place at a set time

Colby, Kusaka 1, and Kawaoka each purportedly attempt to address the costs associated with network access fees, but Applicant's claims provide significant advantages over the systems described in these references.

Applicant's claims clearly distinguish timer based uploads where the user picks a time for the system to upload pictures, and the system uploads pictures at that set, selected time, as purportedly described in Colby, Kusaka 1, and Kawaoka,.  *See, e.g.*, Colby at [0046] (stating "Other embodiments include modes wherein images are transmitted… *at a specific time of day*"); Kusaka 1 at [0432] and [0478] (describing that "[t]he CPU 50 stores in memory the selected time block, engages a means for time count such as the timer 74 to count the time and automatically executes the transmission of the specified image information to the outside by *detecting that the current time point has entered a selected time block*"); and Kawaoka at [0100] (stating "[t]he transmission allowance conditions-judging unit 170 *obtains time from the timer 86 through the time-obtaining section 160*. Then, the transmission allowance conditions-judging unit 170 judges whether or not to transmit images *based on the obtained time*.").

Applicant refers the Examiner to Applicant's December 11, 2017 interview summary in related Application No. 15/188,736 (now U.S. Patent No. 9,936,116).  That summary explains the distinction over Colby, which also applies the Kusaka 1 and Kawaoka references (thus, Applicant believes these references are cumulative).  Following the interview, the Examiner issued a notice of allowance.  The summary reads in-part:

> The Examiner asked whether the current claims are patentable over Colby (Pub. No. 2003/0030731), which purportedly allows a user to "designate a time of day" for picture uploads. Applicant distinguished the present claims from a "timer." Specifically, Applicant used the hypothetical example of an egg timer vs. a device that determines when an egg is actually finished. In a timer scenario, cook time is set – and the device will stop cooking the egg at a designated time, regardless of whether the egg is "done." *On the other hand, a device that actually determines whether an egg is "done" monitors the specific conditions of the egg and only stops cooking it when the conditions are right. Applicant's invention is comparable to the latter example and <u>offers many explicit benefits over a simple timer. For example, a simple timer for picture upload (i.e., setting the upload for 8 PM) would still result in charges to a user's account if the user is "roaming" at the designated time that the upload begins. In short, a timer does not adequately prevent roaming or other network charges that can be</u>*

8

***incurred during photo uploads***….

Indeed, there are numerous advantages to Applicant's claimed inventions compared to time-based uploads. With timer-based uploads, if there is no internet connection at the single defined time, upload will fail (current connection status is not even considered). The requirement to upload only at the single defined time, as opposed to uploading over the internet whenever an appropriate connection becomes available, prevents the opportunity to upload images during any intervening periods that arrive where internet is available and the camera contains a group of designated pictures. In contrast, with Applicant's claimed invention, during any of the (yet to be determined) multiple periods without potentially increased fees, the automatic upload of designated pictures will take place. The specific time of day for upload is not predefined. Thus, for example, a traveler that is roaming can continue over several days to take multiple pictures and designate them for upload, and whenever the camera detects that it is within one (or more) of the periods where there are not potentially increased cellular network access fees  – regardless of time of day – the camera will automatically upload the pictures at that time.

As an alternative to the timer based uploads, Kawaoka also purportedly describes calculating the upload cost based on the file size or the amount of time the upload is expected to take and previously stored cost per minute estimates. The system determines whether to upload based on that internal calculation. Again, this more conventional method does not use current data from the cellular interface to determine whether or not the device is currently in a period of potentially increased cellular network access fees - the system has a stored cost parameter and makes basic calculations based on it. *See, e.g.*, Kawaoka at [0013], and [0102] stating:

> "[0102] …The transmission allowance conditions-judging unit 170 ***calculates the cost for transmitting data based on the obtained data amount***…. If transmission cost is calculated based on communication time, the cost becomes equal to the communication cost per unit time times data amount divided by the data communication speed, ***using previously registered data communication speed and communication cost per unit time***. If the calculated transmission cost falls within a predetermined amount, the image transmission is allowed. However, if the data amount is above the predetermined amount, the data amount of images to be transmitted may be transmitted only after being compressed to a data amount that falls within the predetermined amount. Therefore, communication cost may be saved. Further, information relating to the communication cost maybe updated via the telephone communication line."

As a further distinction, the uploads in Kawaoka are not to a picture hosting site on the internet and the uploads do not occur over the internet. Thus the camera of Kawaoka does not monitor internet connection status (it only monitors connection status over the phone communication line, generally, or connection status from the camera to an intermediary phone that acts as the uploader). *See e.g.*, [0107], discussing using phone numbers to complete uploads.

For at least the above reasons, Applicant's claims clearly distinguish Colby, Kusaka 1, and Kawaoka.

### 2. The remaining references do not address potentially increased cellular network access fees

Based on Applicant's review, it appears that the majority of the references say ***absolutely nothing*** about "network access fees" or "cellular network access fees," and therefore, these references certainly do not disclose or suggest Applicant's claimed system for confining uploads and automatically connecting and enabling upload during periods without potentially increased cellular network access fees. For at least this reason and others (with examples provided below), Applicant's claims are also allowable over the following references, whether considered individually or as a combination:

- **Rothschild** – Applicant and the Examiner addressed Rothschild on the record extensively during prosecution of Application Nos. 15/188,736 (now US Patent No. 9,936,116) and 14/950,370 (now US Patent No. 10,063,761). The Examiner initially relied upon Rothschild in rejections but later withdrew them. Applicant's current claims distinguish Rothchild for the same reasons as the claims of the '116 and '761 patents (because Rothschild fails to address potentially increased cellular network access fees), and more. For example, with respect to timing, Rothschild only automatically uploads "when" (e.g., ***at the specific time***) the user ***manually connects the camera to his intermediary local computer***, and it is Rothschild's ***intermediary computer*** (not the camera) that completes the upload. Rothschild at [0053] and [0056]. The upload to the internet in Rothschild is ***not*** by the camera at all, nor is it triggered automatically based on internet connection status of the camera.

- **Ward** – In addition to its failure to address network access fees, the Ward upload is ***manually*** initiated by a user pressing a "send" button. *See, e.g.*, Ward at [0016]-[0019].

Moreover, Ward says explicitly that **the user must "ensure[] that the camera is connected to the appropriate service"** (*e.g.*, cellular phone service) prior to initiating upload. These operations are what Applicant's claims distinguish and improve upon. In contrast to Ward, with Applicant's claims, the controller automatically uploads designated pictures as claimed during detected periods without potentially increased cellular network access fees in which the connection is available.

- **Moores** – Moores fails to mention any cellular uploads (let alone paccess fees) because "802.11 protocol is used for all wireless communications." Moores at [0034]. In addition, a picture or series of pictures is taken in response to an RFID tag being scanned or other user-triggered event, and the captured pictures are uploaded over a LAN to the server as they are taken (***not*** based on upload conditions). *Id.* at [0028]-[0029].

- **Network Smart Capture** – In addition to failing to address cellular network access fees, the upload in "Network Smart Capture" is not automatic based on network conditions. Instead, "Fixed point observation mode" (p. 1) purports to take and upload photographs in response to the motion of a pet. It does not even address the same problems identified by Applicant, ***because internet on the home network is assumed*** at the time motion is sensed and all photos are uploaded during capturing.

- **Kusaka 2** –Applicant distinguished Kusaka 2 on the record during prosecution of Application Nos. 13/717,681 (now U.S. Patent No. 8,831,418) and 14/203,129 (now U.S. Patent No. 8,818,182). In each case, **the rejections in view of Kusaka 2 were overcome**, and the cases were allowed. In Kusaka 2, at the **time pictures are taken**, they are either stored on a memory card in "recording mode for memory cards" or on a server in "download recording mode." *See, e.g.*, Kusaka 2 at [0470]. Thus, Kusaka fails to address network access fees, and also does not provide the user an option to designate captured photos for upload.

- **Feinberg** – Feinberg says nothing about access fees, and moreover, Feinberg describes uploading using an "Eye-Film" device that is ***separate*** from the camera and acts as an intermediary with a wireless interface for connecting to the internet. *See, e.g.*, Feinberg at [0027].

- **Anderson** – Anderson at 7:22-23 says that a photo sharing service can share revenue with a wireless service provider, but Anderson does not address periods of potentially

increased cellular network access fees or how uploads should be handled during such periods. Moreover, Anderson's uploads are all user-initiated, manual uploads.

- **Foster** – Foster says absolutely nothing about potentially increased network access fees or confining uploads to periods without potentially increased network access fees, because it uploads pictures to a wireless access point, not over a cellular network. Moreover, Foster uploads *all* images from the camera repository to the remote system – with its GUI, a user can see the images or select images to store on a PC or print, but the GUI does not provide a menu option to designate which photos will be cached. *See, e.g.*, Foster at [0022].

- **Montulli 1 and Montulli 2** – Both Montulli 1 and Montulli 2 fail to disclose or suggest automatically enabling upload via a cellular interface of the camera to a picture hosting service on the internet, and therefore, they fail to address periods of potentially increased cellular network access fees that can be associated with cellular data uploads. In fact, the one instance of cellular transfer in these references is not over the internet at all – instead, the phone transfers photos to a home-based server by calling "the server's modem and transmit[ting] data to the server over the POTS network." Montulli 1 at [0024], Montulli 2 at [0021].

- **Allen** – Allen's uploads are manually initiated, for example, by the user speaking a "transmit" voice command – therefore, Allen fails to disclose automatic uploading at all, let alone the specific features of Applicant's claims. *See, e.g.*, Allen at 4:52-54.

- **Choi** – Choi also does not describe any automatic uploads over the internet, and instead purports to discuss manipulating files by voice commands while a camera is transmitting pictures to a computer. *See, e.g.*, Choi at [0043].

- **Brogan** – Brogan purports to describe a transmission by Bluetooth or WIFI (neither involving potentially increased cellular network access fees) that is manually initiated with a "transmit" soft button or physical button.

- **Safai** – Safai purportedly describes a process of uploading that requires multiple manual steps by the user, including manually selecting the photos and recipients, manually connecting the camera to a phone line, manually dialing through a modem to a remote recipient, and manually press a "send" button. *See e.g.*, Fig. 4E and 12:1-21.

- **Jung** – Because Jung does not describe cellular uploads at all, Jung fails to address

potentially increased network access fees and also fails to describe a camera automatically enabling uploads over the internet via a cellular interface.

- **Matsuura** – Matsuura requires connecting the camera to a proprietary, intermediary terminal for uploading – automatic uploads to the internet via an interface of the camera are not enabled.

- **Hunter** – In Hunter, a cell phone that is separate from the camera causes pictures to be sent across a telephone communication network in response to incoming or outgoing calls. *See, e.g.*, Hunter at [0041]. Thus, Hunter does not automatically enable upload during certain periods (or based on whether an internet connection is available) – it responds to specific user-triggered events.

## B.  Undated Non-Patent literature

A prospective licensee (now a licensee) provided the following undated non-patent literature references:

- Network Smart Capture Ver.1.2 (date unknown) (Cite No. D054);

- Partial English Translation of Network Smart Capture Ver.1.2 (date unknown) ("Network Smart Capture") (Cite No. D055);

- Smart Commander Guide to Voice Recognition (date unknown) ("Smart Commander") (Cite No. D053);

- Smart Capture Smart Commander (date unknown) (Cite No. D056); and

- Partial English Translation of Smart Capture Smart Commander (date unknown) ("Smart Capture") (Cite No. D057);

The prospective licensee asserted that "Smart Commander Guide to Voice Recognition" and "Smart Capture Smart Commander" were publicly available in Japan in 1999, and "Network Smart Capture Ver. 1.2" was publicly available in Japan in 2002. Thus, out of an abundance of caution, Applicant cites and provides these references herewith. However, Applicant does not admit that any of these references were publicly available prior to Applicant's effective filing date, nor admit that any of these references were ever "publicly available" as prior art within the meaning of 35 U.S.C. 102 or pre-AIA 35 U.S.C. 102.

## C. **Foreign References and English Translations**

The Japanese references listed below were raised in negotiations by prospective licensees. The footnotes identify the claims of the related Patents that were alleged by the prospective licensee to have elements disclosed in the cited reference.

- JP 2000-214525 to Yoji ("Yoji") (Cite No. C021);[11]

- JP 2005-181365 to Imamura et. al (Cite No. C029);[12]

- JP H09-186954 to Yasuyuki, et al. (Cite No. C030);[13]

- JP 2000-221582 to Yoji ("Yoji 2") (Cite No. C031);[14]

- JP 2000-231151 to Yoji ("Yoji 3") (Cite No. C032);[15]

- JP2000-083186 to Hiroshi ("Hiroshi") (Cite No. C033);[16]

- JP 2002-218092 to Nobuaki (Cite No. C035);[17]

- JP 2000-285413 to Kenji et al. (Cite No. C036);[18]

- JP H11- 212726 to Hideyuki et al. (Cite No. C037);[19]

- JP H11-355617 to Manbu (Cite No. C038);[20]

- JP 2005-134819 to Mineko et al. (Cite No. C039);[21]

The Japanese publications listed above are written in Japanese, and the prospective licensees did not provide English translations. The only English translations available to Applicant are "machine translations" generated by the Japanese Patent Office. The "machine translations" are not certified translations completed by a qualified translator, but rather, should

---

[11] Alleged to disclose elements of related Patent: 7,687,827 – Claim 1.

[12] Alleged to disclose elements of related Patents: 7,687,827 – Claims 1, 2; 8,831,418 – Claim 25; 8,923,692 – Claim 11; 8,897,634 – Claim 1.

[13] Alleged to disclose elements of related Patents: 7,687,827 – Claims 1, 2; 8,831,418 – Claim 25; 8,923,692 – Claim 11; 8,897,634 – Claim 1.

[14] Alleged to disclose elements of related Patent: 7,687,827 – Claim 1.

[15] Alleged to disclose elements of related Patent: 7,687,827 – Claim 1.

[16] Alleged to disclose elements of related Patent: 7,687,827 – Claim 1.

[17] Alleged to disclose elements of related Patents: 8,831,418 – Claim 32; 8,897,634 – Claim 3.

[18] Alleged to disclose elements of related Patents: 8,831,418 – Claim 32; 8,897,634 – Claim 3.

[19] Alleged to disclose elements of related Patents: 8,831,418 – Claim 34; 8,923,692 – Claims 2, 7, 8.

[20] Alleged to disclose elements of related Patent: 8,923,692 – Claims 2, 5, 7, 8.

[21] Alleged to disclose elements of related Patent: 8,923,692 – Claim 11.

be treated as rough translations created by a computer translation system. The machine translations also do not include any translation of the figures and, because they are computer generated, they include text and grammar that is nonsensical in places.

Therefore, the Examiner is advised that Applicant can only ascertain the potential relevance of these Japanese publications based on the machine translations, which may be incomplete and possibly inaccurate in places.[22] Applicant cites on the attached Form SB-08 and provides herewith complete copies of these references and their English "machine translations" as NPL.

Applicant also received Japanese Patent No. JP2000-227633 to Yoji (Cite No. C022), which is also not in English. However, at this time, Applicant does not have any English translation of JP 2000-227633, and therefore none is provided herewith. Applicant cites on the attached Form SB-08 the portions of this reference that were specifically called to Applicant's attention. Should Applicant receive a translation, Applicant will submit the translation to the Examiner and file additional remarks in view of the translation as necessary.

With respect to **all** of the above-listed Japanese references, the prospective licensees that provided them **did not assert** that these references disclose or render obvious any "automatic upload" features of the claims (the references were primarily alleged to disclose voice recognition features). Applicant has reviewed the machine translations and confirmed the same – based on the translations available to Applicant, it does not appear that these references contain any disclosure related to automatic picture upload.

---

[22] Should Applicant receive certified translations, Applicant will file additional remarks or modify the positions taken in these remarks in view of the full translation as necessary.

## <u>CONCLUSION</u>

In view of the above, Applicant believes that all of the pending claims are in condition for allowance.  If the Examiner has any questions regarding the above submissions, he is encouraged to contact the undersigned at his convenience.

Respectfully Submitted,

/Justin J. Lesko /

Justin J. Lesko
Reg. No. 69,643
**Dated:** October 24, 2019          The Law Offices of Lisa & Lesko, LLC
55 E. Monroe St. Ste. 3800
Chicago, IL 60603
Telephone: (773) 484-3285

*Attorney for Applicant*

**Attachments:**
- Substitute Form SB/08
- Copies of Foreign References
- Copies of Non-Patent Literature References (excluding D004)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | | |
|---|---|---|---|---|
| Title | : | AUTOMATIC UPLOAD OF PICTURES FROM A CAMERA | | |
| Serial. No. | : | 16/663,742 | Confirmation No. | : 3076 |
| Applicant | : | Jeffrey C. Konicek | TC/A.U. | : 2852 |
| Filed | : | October 25, 2019 | Examiner | : Rodney E. Fuller |

| | | |
|---|---|---|
| Docket No. | : | Torpere-F04-514 |
| Customer No. | : | 107554 |

## <u>INFORMATION DISCLOSURE STATEMENT & REMARKS</u>

Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

Dear Examiner:

Pursuant to 37 C.F.R. §§ 1.97 and 1.98, Applicant provides the information below and listed on the attached Substitute Form SB-08. This IDS is filed before a first office action on the merits. Accordingly, no fee is required. As stated in § 1.97, the filing of this IDS is not and shall not be construed as an admission that the information cited in the statement is, or is considered to be, material to patentability as defined in § 1.56(b). Applicant further notes that the citation of the references is not an admission that the references constitute "prior art." *See* 37 C.F.R. § 1.97(h) and MPEP § 2129. Applicant expressly reserves the right to antedate the cited references, as appropriate.

The references numbered 1-7 below were raised in recent negotiations by prospective licensees of this application and related patents within the same family (this application and the related patents are referred to collectively as the "CEV Patents"). The specific portions of the references cited by the prospective licensee are identified below. The footnotes identify the claims of the CEV Patents that were alleged by the prospective licensee to have elements disclosed in the cited reference.

1. U.S. Pub. No. 2006/0114338 to Rothschild ("Rothschild") (Claim 1, Claim 10, Paragraphs [0025]-[0027], [0029], [0047], [0050], [0051]);[1]

---

[1] Alleged to disclose elements of CEV Patent 9,936,116 – Claim 1.

2. U.S. Patent 6,636,259 to Anderson et al. ("Anderson") (3:24-49, 6:7-21, 9:11-17, 10:1-14, 10:47-52, 11:37-50);[2]

3. U.S. Patent 7,468,744 to Edwards et al. ("Edwards") (3:54-61, 4:29-67, 5:41-54, 6:40-54, 7:13-26, 8:19-31, 8:44-9:3);[3]

4. U.S. Patent 6,715,003 to Safai ("Safai") (Claim 189, Fig. 2, Paragraphs [0052], [0056], [0057], [0059], [0063], [0069], [0083], [0087], [0098], [0100], [0101], [0104], [0169], [0180]);[4]

5. U.S. Pub. No. 2005/0168579 to Imamura ("Imamura") (Fig. 6, Paragraphs [0039], [0040], [0057], [0064], [0069], [0070], [0072], [0073]);[5]

6. JP 2000214525 to Yoji ("Yoji") (Claim 1, Paragraphs [0009], [0014], [0017], [0041], [0108], [0109], [0112], [0115]);[6]

7. TW 200520512 to Liu et al. ("Liu") (8:17-24, 9:1-18).[7]

**1. Items 1-4**

Applicant and the Examiner addressed both Rothschild and Anderson during prosecution of related applications. For that reason, Applicant already cited these references in a previous IDS in this Application (Rothschild as Cite No. B051 and Anderson as Cite No. A079 with Applicant's October 25, 2019 IDS).

Specifically, for Rothschild, Applicant refers the examiner to page 10 of the October 25, 2019 IDS Remarks, which explains why the present claims distinguish Rothschild.

For Anderson, the Examiner cited Anderson as "pertinent but not relied upon" in Application No. 15/188,736 (now US Patent No. 9,936,116) and Application No. 14/950,370 (now US Patent No. 10,063,761).[8] Thus, the examiner reviewed Anderson but determined that it

---

[2] Alleged to disclose elements of CEV Patent 9,936,116 – Claim 1.

[3] Alleged to disclose elements of CEV Patent 9,936,116 – Claim 1.

[4] Alleged to disclose elements of CEV Patent 8,923,692 – Claim 1.

[5] Alleged to disclose elements of CEV Patent 9,936,116 – Claim 1 and CEV Patent 10,257,401 – Claim 1.

[6] Alleged to disclose elements of CEV Patent 7,687,827 – Claims 3 and 22, CEV Patent 8,923,692 – Claim 1, and CEV Patent 10,257,401 – Claim 1.

[7] Alleged to disclose elements of CEV Patent 7,687,827 – Claim 22.

[8] *See* FOA, Application No. 15/188,736, (June 19, 2017); NFOA, Application No. 14/950,370 (June 20, 2017).

was not relevant enough to be included as part of any prior art rejection of the claims in related applications.

Like the claims in related applications, the currently pending claims distinguish Anderson, because Anderson does ***not*** disclose or obviate "an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees" as recited in independent claims 21 and 25. Furthermore, Anderson does not describe, as a condition for upload, the controller determining "the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface" and that the controller automatically enables upload of designated photos to the picture hosting service when this condition and the other conditions are met.

Anderson does not address periods of potentially increased cellular network access fees or how uploads should be handled during such periods. With respect to fees, Anderson at Col. 10, lines 47-52 describes simply that a user can call a dedicated server rather than being billed for an ISP connection. This says nothing about varied network access fees or avoiding automatic uploads during expensive fee periods. Moreover, Anderson requires the user to manually initiate an upload with a "send" button or "continue" button, and to establish the internet connection manually, so the device in Anderson does not automatically connect and upload when all of the indications are received, as recited by Applicant's claims. Anderson at Col. 11, Lines 37-50.

Applicant recently received Edwards for the first time, and it is therefore cited on the attached form SB-08 as Cite No. A091. The currently pending claims distinguish Edwards too. Edwards says absolutely nothing about cellular network access fees, confining automatic uploads to periods without potentially increased cellular network access fees, or automatically enabling automatic uploads based on present network conditions. In fact, the only relevant factors for whether to attempt upload in Edwards are (1) whether the amount of data has exceeded a predetermined threshold for transfer or (2) whether a user has initiated upload.

Edwards says (at 8:39-43):

transfer manager 416 may monitor data buffers 422 and automatically initiate an arbitration procedure ***when the amount of data 514 in data buffers 422 exceeds a predetermined threshold***. Alternately, transfer manager 416 may initiate an arbitration procedure in response to system user input.

Applicant also recently received Safai for the first time, and it is therefore cited on the attached form SB-08 as Cite No. A092. Safai discloses a **manual** upload process initiated by the user (i.e., not automatic) that also (1) requires the user to make a physical connection to an intermediate device for uploading and (2) does **not** occur "over the internet and **via the cellular interface**" of the camera nor consider "cellular network access fees."

Paragraph [0180] of Safai says that the camera upload occurs by: "prompting the user to connect a cable between modem 214 of the camera 100 and a telephone line that is coupled to network 806; automatically dialing a pre-defined telephone number that is associated with modem 804; and carrying out handshaking or other communications between modem 214 and modem 804." *See also*, Safai at [0101] ("the user is expected to connect a cable from the camera to a telecommunication device or network."). Accordingly, Safai **does not disclose uploading pictures using the cellular interface of a camera at all**, let alone doing so automatically during any period in which certain conditions are met, as recited in independent claims 21 and 25. For the same reason, Safai does not disclose the claim eleements that recite "an upload option that instructs the camera system to confine automatic picture upload to periods without potentially increased cellular network access fees" nor the controller determining, as a condition for upload, that "the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface."

In fact, Safai confirms that its user manually causes uploads, rather than a controller automatically enabling upload when conditions are met, because Safai always requires the user to press a "send" button at the time of the upload.

- Safai [0098]: "After selecting one or more images, providing one or more intended recipient addresses, and optionally recording a message, an image transport confirmation screen 458 is displayed, as illustrated in FIG. 4G. The confirmation screen 458 includes a confirmation box 460, a Cancel button 415a, a Back button 415b, **a Send button 462**, and a Send Later button 464."

- Safai [0101]: "The user may **select the Send button 462,** Cancel button 415a, or the Back button 415b. **A user may dispatch the selected images to the entered addresses by selecting the Send button 462** of the confirmation screen 458."

- Safai [0104]: "As discussed above, **when the Send button 462 is selected**, in response, the transport application sends the selected photos to the destination address indicated in the confirmation box 460."

- Safai [0180]: "**Block 1220 indicates that a SEND NOW option has been selected** using software elements of camera 100. In block 1222, camera 100 opens a network

4

connection to server 801. This may involve: ***prompting the user to connect a cable between modem 214 of the camera 100 and a telephone line that is coupled to network 806***; automatically dialing a pre-defined telephone number that is associated with modem 804; and carrying out handshaking or other communications between modem 214 and modem 804."

For at least the above reasons, the currently pending claims clearly distinguish Rothschild, Anderson, Edwards, and Safai (Items 1-4 from the list above).

## 2. Items 5-7

Applicant and the Examiner addressed both Imamura and Yoji during prosecution of related applications. For that reason, Applicant already cited and provided these references in a previous IDS in this Application (Imamura as Cite No. B035, Yoji as Cite No. C021, and Yoji's Machine Translation as Cite No. D051 with Applicant's October 25, 2019 IDS).

Liu (Item 7) is written in Chinese, and the prospective licensee did not provide an official English translation. The English translation available to Applicant is a "machine translation" generated by Google. The "machine translation" is not a certified translation completed by a qualified translator, but rather, should be treated as a rough translation created by a computer translation system. The machine translation also does not include any translation of the figures and, because it is computer generated, it includes text and grammar that is nonsensical in places.

Therefore, the Examiner is advised that Applicant's explanation is based on a machine translation, and that translation may be incomplete and possibly inaccurate in places.[9] Applicant cites Liu (Cite No. C046) and its translation (Cite No. D117) on the attached Form SB-08 and provides copies of both herewith.

The prospective licensee cited Imamura, Yoji, and Liu for elements of related CEV patents describing a camera having "a voice-recognition unit/voice recognizer" and a microphone, and that is configured to receive and recognize voice commands.

The present independent claims do not recite microphones or voice recognition. Moreover, the prospective licensee that provided Imamura, Yoji, and Liu did not assert that these references disclose or render obvious any "automatic upload" features of the claims. Applicant has reviewed the U.S. publication and the machine translations to confirm the same – it does not appear that Imamura, Yoji, or Liu contain any disclosure related to automatic picture upload.

---

[9] Should Applicant receive a certified translation, Applicant will file additional remarks or modify the positions taken in these remarks in view of the full translation as necessary.

Accordingly, Applicant does not believe Imamura, Yoji, or Liu are relevant to the important features of the pending claims but advises the Examiner to independently review the references.

**3. Conclusion**

In view of the above, Applicant believes that all of the pending claims are in condition for allowance over the art.  If the Examiner has any questions, please contact the undersigned at your convenience.

Respectfully Submitted,

/Justin J. Lesko /

**Dated:** August 27, 2020

Justin J. Lesko
Reg. No. 69,643
The Law Offices of Lisa & Lesko, LLC
55 E. Monroe St. Ste. 3800
Chicago, IL 60603
Telephone: (773) 484-3285

*Attorney for Applicant*

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | | | | |
|---|---|---|---|---|---|
| Title | : | AUTOMATIC UPLOAD OF PICTURES FROM A CAMERA | | | |
| Serial. No. | : | 16/663,742 | Confirmation No. | : | 3076 |
| Applicant | : | Jeffrey C. Konicek | TC/A.U. | : | 2852 |
| Filed | : | October 25, 2019 | Examiner | : | Rodney E. Fuller |
| | | | | | |
| Docket No. | : | Torpere-F04-514 | | | |
| Customer No. | : | 107554 | | | |

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

<u>**RESPONSE TO NON-FINAL OFFICE ACTION**</u>

Dear Examiner:

　　This submission is responsive to the Non-Final Office Action issued in the above-captioned application dated February 1, 2021. A request for a two month extension of time, together with the required fee, is provided herewith.

　　**Applicant's Remarks** begin on page 2 below.

## REMARKS

Applicant is in receipt of the Examiner's February 1, 2021 Non-Final Office Action ("NFOA").  Claims 21-28 are currently pending.

## I.  Examiner Interview Summary

Counsel of record Justin Lesko, the inventor Jeff Konicek, and the Examiner Rodney Fuller conducted an interview on June 11, 2021.  During the interview, Applicant and the Examiner discussed the NFOA's Section 112 Written Description rejection.  Applicant presented in outline format the explanation for claim support provided in Section II of this response below.

In view of Applicant's explanation, the Examiner agreed that the claims are fully supported and the Section 112 rejection will be withdrawn.  The Examiner indicated that if Applicant submits the explanation for written description support and terminal disclaimers to overcome the double patenting rejections, this application is in condition for allowance.

To obviate the double patenting rejections based on U.S. Patent Nos. 9,936,116 and 10,063,761, Applicant files herewith two Forms PTO/AIA/26 (Terminal Disclaimer to Obviate a Double Patenting Rejection Over a "Prior" Patent), along with the required fees.

## II.  Applicant's Response to the Section 112 Written Description Rejection

"The subject matter of the claim need not be described literally (i.e., using the same terms or *in haec verba*) in order for the disclosure to satisfy the description requirement." M.P.E.P. 2163.02. Instead, the question is whether the specification conveys with *reasonable* clarity to those skilled in the art that the applicant was in possession of the claimed invention. M.P.E.P. 2163(I)(B), citing *Vas-Cath, Inc.*, 935 F.2d at 1563-64.

"Factors to be considered in determining whether there is sufficient evidence of possession include the level of skill and knowledge in the art, partial *structure*, physical and/or chemical properties, *functional characteristics* alone or *coupled with a known or disclosed correlation between structure and function*, and the method of making the claimed invention. Disclosure of any combination of such identifying characteristics that distinguish the claimed invention from other materials and would lead one of skill in the art to the conclusion that the applicant was in possession of the claimed species is sufficient." See *Eli Lilly*, 119 F.3d at 1568 (emphasis added). Also, the description needed to satisfy the requirements of 35 U.S.C. 112

2

"varies with the nature and scope of the invention at issue, and with the scientific and technologic knowledge already in existence." *Capon v. Eshhar*, 418 F.3d at 1357.

Applicant responds to each of the NFOA's points below.

**A.  The touchscreen elements are supported.**

*The NFOA asserts:* "The specification sets forth multiple inventions and teaches a 'touch sensitive display' in paragraph 22. The claims correspond to an invention that is set forth in paragraphs 36 - 38. …."; "There is no disclosure of the touch sensitive display used to select an upload option or a user-selectable input related to upload periods"; and "There is no disclosure that the touch sensitive display is used to select photos to be uploaded."

*Applicant's Response:*  The specification directly couples known touchscreen LCDs with the functions of camera control and menu selection as claimed.

First, the specification describes the touchscreen LCD allowing the user of the system to "interact with menus, features, and functions displayed on the LCD display" and "control the camera system" through touch:

> **Para. 22** - Another aspect of the present invention provides that the camera LCD display (FIG 1, element 14) employs touch sensitive technology.  This technology is well known in the computer art and can be any of resistive, capacitive, RF, etc touch technology.  This aspect of the present invention ***allows the user to interact with menus, features and functions*** displayed on the LCD display directly rather than through ancillary buttons or cursor control….

> **Para. 31** – **[T]he user can interact with the camera through touch**, voice, and gaze (i.e., sight) to manipulate menus, ***control the camera system***, compose the shot, focus, zoom, enable/disable flash, select macro or panoramic camera modes, etc.

Thus, the specification expressly instructs one skilled in the art to interact via touch technology with menus on the LCD to control camera features and functions.  These camera functions include automatic upload functions, as the touchscreen control is not described as being separate or excluded from other camera features.  To the contrary, the specification specifically states that the touch input aspects of the invention should be combined with other features for "the control of camera menus, ***camera features***, ***camera options***, camera settings, commanding picture taking, enabling flash, etc."

> **Para. 45** - ***Additionally, not all aspects of the invention need to be practiced together, it is contemplated that subsets of the disclosed aspects of the present invention may be practiced in an embodiment and still be within the scope of***

3

*the present invention*…. Combining various aspects of the invention herein disclosed, such as voice recognition, *touch input,* gaze tracking, etc *for camera control* provides much more natural and human interfacing to the camera system for the control of camera menus, *camera features*, *camera options*, camera settings, commanding picture taking, enabling flash, etc.

The specification even discloses using the LCD display (which is the touch-sensitive display, as described in Para. 22) with cellular upload:

> **Para.37** - In a second preferred embodiment of this aspect of the invention, the inventive camera system is equipped with software and hardware coupled to the camera controller allowing independent communication with a computer network for the primary purpose of communicating its pictures over the internet… Alternatively, the invention contemplates the use of … cellular data networks … as the interconnection technology (FIG. 3, element 46b) used by the inventive camera system…. *The camera system LCD display serves the purpose of displaying internet webpages when the user is navigating the internet in addition to its function as the camera display.  So equipped*, the inventive camera system can now independently upload its pictures to any of the internet-based photo printing services, such as those provided by Walmart.com, Walgreens.com, Kodak.com, etc., without the need for first storing the photos to a computer system and then connecting the computer system to the internet to upload the pictures."

Thus, "so equipped" with the previously described LCD touchscreen display, Para. 36 teaches that "[t]he camera system preferably includes the ability for the user to *indicate* to the camera which pictures to offload so that the camera offloads only those pictures that are so *indicated by the user*," this "indicating" can be the disclosed method of selecting a menu option on a touchscreen to control the camera.

Similarly, Paragraph 38 describes *user instructions* for the upload, which can happen via the disclosed touchscreen. There, the specification says that the system is "*operable for being instructed* to automatically initiate a connection to the internet whenever the predetermined conditions are met and it is in range of the network connection" and "[a]dditionally … *operable* so that the automatic connection is made only at certain times of the day or weekends, etc., so as to confine picture transmission to periods of low network usage or periods of cheaper network access, etc." The specification uses the word "operable" in describing user instructions to the camera system. As explained above, the specification explicitly describes that such instructions are sent via the touchscreen.

Also, in Fig. 3 The LCD touchscreen display 42 is shown as an input to the camera controller 40 that handles "other camera control" 50. In other words, Fig. 3 shows the

4

interconnection between the LCD touchscreen input and "other" functions, such as upload functions.



FIG. 3

**B.  The specification discloses the claimed conditions for upload.**

*The NFOA asserts:* "The description only supports the automatic connection upload when two conditions are met (1) 'it has a predetermined number of pictures' and (2) 'can so connect'. Thus, the disclosure does not support the conditions of automatic upload set forth in claims 21 and 25."

*Applicant's Response:*  The NFOA is incorrect, and all of the claimed conditions for upload are supported.

The specification describes photo offloading as an "aspect of the present invention" and that offloading occurs when "a ***set*** of predetermined conditions, ***such as*** day, time, number of pictures to offload, *etc.*, are met."

> **Para. 36** - Once a user of a camera has taken pictures, typically he will wish to print or otherwise develop the pictures for viewing, framing, etc.  **Another aspect of the present invention provides for simpler photo offloading from the modern digital camera when <u>a set of predetermined conditions, such as day, time, number of pictures to offload, etc., are met</u>**. The camera system preferably includes ***the ability for <u>the user to indicate to the camera</u> which pictures to offload so that the camera offloads only those pictures that are so indicated by the user***....

5

Thus, the specification expressly states that upload is dependent on a *set* of conditions.

Under the broadest reasonable interpretation, a "set" of conditions is certainly not limited to just two conditions, and can include 3, 4, 5 or even 10+ conditions. Therefore, the number of conditions would be limited to two conditions *only* if the specification expressly limited the scope of the term "set" in some way. But the specification describes the "set" expansively, consistent with its BRI.   Specifically, the inventor confirms that the "set of predetermined conditions" clearly includes greater than two conditions by: (1)  expressly introducing the list with "such as", (2) listing *three* examples of conditions (different from the two in the NFOA), and (3) adding the *open-ended* phrase  "etc." Moreover, as discussed below, the specification expressly describes numerous additional conditions associated with the upload process in Paragraphs 36 ("day, time, number of pictures to offload, etc.," "user … indicate[s] to the camera which pictures to offload"), 37 (upload over the cellular network), 38 ("whenever the predetermined conditions are met,"  "it is in range of the network connection," "confine[d]...to periods of cheaper network access") and 48 ("time, date, status of equipment, etc.").

As to the user "designation" of photos being a condition, as shown above, the user designating photos is discussed right next to the discussion of conditions in para. 36. In that embodiment, "the camera offloads *only* those pictures that are so indicated by the user."  Thus, "designation" of pictures is *in fact* a condition for upload (and discussed in that section) because if no pictures are designated, no upload will occur.

Para. 37 describes this same upload "aspect of the invention" in which the pictures are uploaded over the cellular network:

> **Para. 37** - In a second preferred embodiment of ***this aspect of the invention***, the inventive camera system is equipped with software and hardware coupled to the camera controller allowing independent communication with a computer network for the primary purpose of communicating its pictures over the internet…. [T]he invention contemplates the use of … ***cellular data networks***, etc. as the interconnection technology (FIG. 3, element 46b)….

Para. 38 describes this "aspect of the invention" too, emphasizing that "the inventive camera system is operable for being instructed to automatically initiate a connection to the internet, LAN, printer, etc. *whenever the predetermined conditions* are met and it is in range of the network connection, (e.g., WIFI, Bluetooth, wireless USB, wired LAN, etc)." As this is an "enhancement" to the "above-disclosed" upload "aspect" (of Para. 36), Para. 38 is certainly *not* limiting automatic upload to just two conditions, as suggested by the Examiner. Instead, Para. 38

of the specification clearly refers to and further explains the expansive "predetermined *conditions*" (plural) referenced in Para. 36.

Para. 38 also describes that upload can be "*confine[d]*...to periods of cheaper network access." Without doubt, a person of skill in the art would readily understand that the upload is *conditioned* upon (i.e., confined to) the current status of the network costs. This also is clearly one of the possible "conditions" for upload, even if it is not explicitly called a "condition" in para. 36 above. In other words, network access fees are one of the "etc." conditions contemplated by the specification.

Par. 48 emphasizes again that the set of predetermined rules or conditions for automatic upload is expansive and includes "status of equipment" (which can be used to determine if the device is in one of the periods without potentially increased cellular network access fees) as one of the upload conditions:

> It is further contemplated that certain aspects of the presently disclosed invention have application beyond those disclosed herein.... ***As an example, automatically connecting to the internet when a set of predetermined rules or conditions (such as time, date, status of equipment, etc) is met*** would be useful for the download/upload of information from/to the internet, like music, video, etc. for processing, storage, transmission to another party, etc..

Thus, in fact, all four of the conditions set forth in the claim are expressly supported and described in the specification.

**C. The specification discloses "the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface" and "the controller has confirmed that the camera system is within a period without potentially increased cellular network access fees, as determined using data from the cellular interface."**

*The NFOA asserts:* "There is no disclosure of determining a period based on data from the cellular Interface."

*Applicant's Response:* The NFOA is incorrect.

The specification expressly describes that upload can be confined to "periods of cheaper network access," that the device can be a cellular phone with known structures for accomplishing that task, and that "status of equipment" is used by the cellular phone to make the upload determination, as previously confirmed by the Examiner.

7

In a related application, Applicant addressed the disclosure in para. 38, and the Examiner agreed that a similar claim element was supported.  Specifically, during prosecution of Application No. 15/188,736 (US Patent No. 9,936,116), Applicant amended the claims to recite:

> (f) the controller configured to...(ii) receive, via the touch sensitive display, a user selection of *an upload option that instructs the device to confine automatic picture upload* to periods without potential cellular network access fees; and

> (iii) automatically upload designated pictures...only if predetermined conditions are met, the predetermined conditions including at least the controller receiving: (1) ***an indication from the cellular interface that the upload is acceptable*** based on the selected upload option;

Applicant explained that para. 38 supports these elements, which distinguish the prior art, and the Examiner agreed.  *See* December 5, 2017 Interview and December 11, 2017 Amendment.

Para. 38 says explicitly that picture transmission is confined to "periods of low network usage or periods of cheaper network access."

> In an enhancement to the above-disclosed embodiments of this aspect of the invention, the inventive camera system is operable for being instructed ***to automatically initiate a connection to the internet***, LAN, printer, etc. whenever the predetermined conditions are met and it is in range of the network connection, (e.g., WIFI, Bluetooth, wireless USB, wired LAN, etc)... Additionally, the inventive camera system is preferably operable so that the automatic connection is made only at certain times of the day or weekends, etc., ***so as to confine picture transmission to periods of low network usage or periods of cheaper network access, etc***....In the second embodiment above, the inventive camera system automatically connects to the internet preferably via WIFI, although cellular network, etc. connection is also contemplated, when it has a predetermined number of pictures and can so connect, and will send the pictures to virtually any internet destination without user intervention. For example, the inventive camera system can be instructed to automatically send the pictures to an email account, internet picture hosting site, web-based photo printing site, the user's internet-connected home computer (***when he is on vacation***, for instance), etc. In this way, valuable pictures are immediately backed-up and the need for reliance on expensive camera storage media like flash cards, SD, etc. is greatly reduced.

Applicant's disclosure also ties the above-referenced automatic upload embodiment to cameras in cellular phones, while acknowledging the fees charged by cellular service providers. The specification says at Para. 44:

> Additionally, ***other aspects of the present invention taught for the improved camera system are applicable to the improved cell phone*** herein disclosed.... The aspect of the invention allowing for automatic connection to a LAN or the internet is also contemplated for use with ***cell phone cameras***. This aspect of the invention ameliorates the prior art storage space limitation which severely hampers the utility of the cell phone camera. ***Cellular service providers typically charge a fee for internet access*** or emailing and so an automatic feature to connect to the net or send email for the purposes of transmitting pictures can improve revenue generation for these companies.

Thus, the specification describes that (1) the cellular device can be instructed to confine uploads to "periods of cheaper network access" and (2) cell service providers charge network fees.

In addition, para. 48 of applicant's specification emphasizes "status of equipment" (e.g., network equipment) as one of the possible conditions for upload:

> It is further contemplated that certain aspects of the presently disclosed invention have application beyond those disclosed herein.... ***As an example, automatically connecting to the internet when a set of predetermined rules or conditions (such as time, date, <u>status of equipment, etc</u>) is met*** would be useful for the download/upload of information from/to the internet, like music, video, etc. for processing, storage, transmission to another party, etc.

"Periods of cheaper network access," as discussed in Para.38, can be determined via "status of equipment" because the device receives cellular network information from equipment on the cellular network. As an example at the time of the invention (known to a PHOSITA), equipment on the network indicates to the cellular phone (through its cellular interface) that the device is roaming on a more-expensive non-provider network. This roaming period would ***not*** be "one of the periods without potentially increased cellular network access fees," and upload is prevented during this particular period.

Thus, as previously found by the Examiner for a similarly-worded claim, there is express support in the specification for the language of claim 21. Moreover, it is established law that in *haec verb*a disclosure is not required and the question is whether the specification conveys with reasonable clarity to those skilled in the art that the applicant was in possession of the claimed invention," as explained above.

9

### III.  <u>Conclusion</u>

In view of the above, Applicant believes that claims 21-28 are in condition for allowance. If the Examiner has any questions, please contact the undersigned.

Respectfully Submitted,

/Justin J. Lesko/

Justin J. Lesko
Reg. No. 69,643

The Law Offices of Lisa & Lesko, LLC
55 East Monroe Street Suite 3800
Chicago, IL 60603
Telephone: (773) 484-3285

*Attorney for Applicant*

Dated: June 11, 2021