**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| CUTTING EDGE VISION, LLC <br><br> Plaintiff, <br><br> v. <br><br> T-MOBILE US, Inc., and T-MOBILE USA, Inc. <br><br> Defendants. | Case No. 6:24-cv-270-AM-DTG <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF'S SUR-REPLY CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I. Plain and ordinary meaning applies to the "cellular network access fees" elements ...................................................................................................................1

II. "The device" is the "camera system." ..................................................................1

III. The "controller" elements are not indefinite.......................................................3

   A. The Court's construction of the "controller" elements as not 112(6) remains correct ..................................................................................................3

      1. The prosecution history confirms the "controller" elements are not 112(6) ...........3

      2. It is undisputed that the controller is a structure ......................................................3

      3. T-Mobile fails to rebut that the claims recite an IF-THEN program structure ........4

      4. The "determining" operation does not require specialized programming ...............6

   B. The specification provides any necessary algorithms for the claimed operations ...............9

IV. Conclusion .........................................................................................................10

## TABLE OF AUTHORITIES

*Advanced Ground Info. Sys., Inc. v. Life360, Inc.*,
    830 F.3d 1341 (Fed. Cir. 2016) .................................................................................. 8-9

*Apple Inc. v. Motorola, Inc.*,
    757 F.3d 1286, 1298 (Fed. Cir. 2014) ......................................................................... 3-4

*EON Corp. IP Holdings LLC v. AT&T Mobility LLC*,
    785 F.3d 616, 623 (Fed. Cir. 2015) ................................................................................. 9

*Finisar Corp. v. DirecTV Grp., Inc.*,
    523 F.3d 1323, 1336 (Fed. Cir. 2008) .............................................................................. 2

*Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*,
    732 F.3d 1376, 1381–82 (Fed. Cir. 2013) ...................................................................... 10

*Jones v. Cain*,
    600 F.3d 527, 541 (5th Cir. 2010) .................................................................................... 1

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898, 910 (2014) .................................................................................................. 2

*Phillips v. AWH Corp.*,
    415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc) ............................................................. 3

*TecSec, Inc. v. IBM*,
    731 F.3d 1336, 1349 (Fed. Cir. 2013) .............................................................................. 10

T-Mobile's proposed constructions are clearly erroneous. *First*, T-Mobile's proposed construction for the "cellular network access fees" elements adds words such as "baseline" and "beyond" that have no basis in the record. *Second*, T-Mobile fails to identify any ambiguity in the intrinsic record, which unambiguously describes the "the device" as the "camera system." *Third*, CEV's Response confirmed the "controller" elements are not 112(6), including because they recite the structure of an IF-THEN program for picture uploading. In Reply, T-Mobile in effect abandons its prior positions and improperly takes new positions that are defective on the merits. T-Mobile now argues that the "determining" condition–rather than element (f)–is the "point of novelty" requiring a specialized program. T-Mobile's new argument is untimely and considered waived. *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010). More importantly, it is unsupported and wrong.

## I. Plain and ordinary meaning applies to the "cellular network access fees" elements.

T-Mobile's Reply (p. 2) argues, "Without *baseline* 'cellular network access fees,' 'increased' is unmeasurable and indefinite." This highlights the flaw in T-Mobile's proposed construction: T-Mobile injects "baseline" fees into the claims, while citing nothing in the patents or record that refers to a "baseline" fee. T-Mobile (p. 2) argues that Dr. Hughes "rewrite[s] the claims," but it is *T-Mobile* that rewrites the claims with the word "baseline." In contrast, CEV requests "plain and ordinary meaning," consistent with the Court's prior ruling. Dkt. 42-8 at 5-6.

T-Mobile's Reply (p. 2) also cites two indefiniteness cases for a "term of degree." But T-Mobile does not assert indefiniteness here, and "increased" is not a term of degree–something is either increased or not, regardless of the amount of the increase. Hughes Decl. ¶¶79-80.

## II. "The device" is the "camera system."

Dr. Hughes's unrebutted testimony establishes, as this Court previously held, that a POSITA would conclude "the device" is the "camera system" based on the intrinsic evidence:

1

- The '761 Patent describes at 2:64-13:1 (emphasis added): "the *inventive camera* system is preferably operable so that the automatic connection is made only at certain times of the day or weekends, etc., so as to confine picture transmission to … periods of cheaper network access, etc." Hughes Decl. at ¶¶38-41.

- The specification repeatedly uses "instruct" and "instructed" only in connection with the nouns "the camera system" or "the camera." *Id.* at ¶¶42-43.

- During prosecution, CEV described "the claimed system" as "the device." *Id.* at ¶¶44-46.

- Related '472 Patent Claims 1 and 5 contain parallel language using the phrase "the camera system" instead of "the device." *Id.* at ¶¶47-50.

In contrast with the above, T-Mobile provides no evidence whatsoever that would lead to a conclusion that "the device" is the controller, rather than the camera system.

T-Mobile's Reply (p. 10) argues that "nothing CEV cites *excludes* 'the device' from being 'the controller.'" However, requiring exclusion is inconsistent with the *Nautilus* standard, which requires only "that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with *reasonable* certainty" and not "absolute precision." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). Here, complete consistency across the specification, the prosecution history, and parallel claims in related patents provides the requisite "reasonable certainty" (and more).

To excuse its lack of evidence, T-Mobile's Reply (p. 10) calls the dispute "a question of law" and argues that Dr. Wolfe "was not asked to provide an opinion on 'the device.'" That misses the point. The point is that Dr. Wolfe was available and reviewed the file histories and Dr. Hughes's prior testimony on "the device," yet T-Mobile provided zero evidence regarding "the device." *See*, CEV Response at pp. 18-19.

T-Mobile's Reply (p. 10) also argues for the first time that "the 'doctrine of the last antecedent' strongly suggests that 'the device' modifies 'controller.'" However, "the doctrine of the last antecedent" is only a guideline, not a rule. *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1336 (Fed. Cir. 2008). And the guideline is followed only "where no contrary intention

appears." *Id*. In this case, CEV's intent from the intrinsic evidence is that "the device" is "the camera system," as this Court previously ruled. Dkt. 42-8 at 5. Given CEV's clearly articulated "contrary intention," the loose "doctrine of last antecedent" guideline should not be applied.

**III.     The "controller" elements are not indefinite.**

   **A. The Court's construction of the "controller" elements as not 112(6) remains correct.**

   T-Mobile does not meet its burden to prove that CEV's claims are subject to 112(6).

   **1.  The prosecution history confirms the "controller" elements are not 112(6).**

   T-Mobile's Reply (p. 7) misleadingly downplays the prosecution history by asserting that it only shows "the examiner did not expressly assert that the claims were subject to means plus function." But the prosecution history shows much more than just the absence of examiner action. The prosecution history shows both that (1) CEV, as the claim drafter, provided clear notice that it did not draft section 112(6) claims, and (2) with that notice, the examiner addressed section 112, yet declined to adopt 112(6) constructions. CEV Response (pp. 3-4). "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc). Aside from blatant mischaracterization of the prosecution history, T-Mobile has no answer.

   **2.  It is undisputed that the controller is a structure.**

   T-Mobile's Opening Brief (p. 6) rehashed TCL's argument that "controller" is "a substitute for any generic means for performing the claimed functions." CEV's Response (Section III.1.a) fully rebutted that argument, which the Court (*see* Dkt. 42-8 at 3) rejected previously.

   Rather than responding substantively, T-Mobile seemingly withdraws its incorrect assertion that the "controller" is a "generic means." For example, T-Mobile's Reply (p. 4) asserts that *Dyfan*, *Zeroclick*, *Apple*, *VDPP*, and *Cyboenergy* are "inapposite because these cases …

3

focus[] on a different part of the *Williamson* test—whether some structure was recited." Similarly, T-Mobile's Reply (p. 4) argues that "CEV's reliance on *WSOU* is misplaced," in stark contrast with its prior assertion that "*WSOU* is especially instructive" (T-Mobile Opening Brief, pp. 9-10).

If the cases cited by CEV (including T-Mobile's own cases) are "inapposite," then T-Mobile *must* be dropping its prior, flawed argument that the "controller" is a "generic means." T-Mobile should expressly notify the Court of this change in its position. Regardless, the argument fails, because T-Mobile fails to address the substance of Section III.1.a of CEV's Response.

3. **T-Mobile fails to rebut that the claims recite an IF-THEN program structure.**

The express words of claim element (f)(ii) provide the structure of an IF-THEN conditional program for the controller's uploading operations. CEV Response (pp. 8-11). That meets any need for "specialized programing" structure in the claims, thereby confirming the claims are *not* 112(6). T-Mobile's Reply attempts a few weak responses on this point, but those responses fail.

*First*, T-Mobile's Reply (p. 8) argues: "the claim never recites 'if' or 'then' 'true,' 'false,' or 'test.'" However, for software structure, CEV was not required to recite actual IF-THEN *code*. Instead, T-Mobile neglects that "the 'structure' of computer software is understood through, for example, an outline of an algorithm, a flowchart, or *a specific set of instructions or rules*." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014).

Moreover, in explaining the IF-THEN program structure, Dr. Hughes identifies the *specific language in the claim itself* that provides program structure, stating, for example:

- "The claim language 'detected by the controller in which all three of the following conditions are met' indicates that the controller program must test for the conditions as TRUE or FALSE." Hughes Decl. at ¶105.
- "The claim language 'automatically' and 'during any period' requires that the controller must perform specific operations ('connect…and enable an upload') if all of those conditions are TRUE." *Id.* at ¶106.
- "The fact that the word 'conditions' appears in the claim suggests to a POSITA that the

4

claim is referring to a conditional programming structure, such as IF-THEN programming structure." *Id.* at ¶104.

- "The output of that algorithm is to perform the recited operation in the claim element, namely 'connect…and enable an upload.'" Id. at ¶106.

- "The claim language [in the '761 Patent] 'automatically connect…and cause an upload' and 'after receiving' indicates that the controller program must perform the operation "connect…and cause an upload" after receiving all of the inputs as TRUE." *Id.* at ¶111.

T-Mobile does not (1) identify any error in the above analysis, (2) provide any contrary evidence, or (3) provide any alternative interpretation for the claim terms Dr. Hughes highlights.

*Second*, T-Mobile's Reply (p. 9) argues that Exhibit 2 to Dr. Hughes's declaration, "adds steps and language such as 'start,' 'true' and 'false,' in hopes of creating an algorithm not found in the specification or claims." However, Exhibit 2 is simply "an alternative presentation of *the instructions that are specified in the patent claims*." Hughes Decl. at ¶152. And as explained above, Dr. Hughes identifies the actual *claim* language that provides the structure.

*Third*, T-Mobile asserts that "CEV does not attempt to defend the '761 Patent's claims." That is false. *See, e.g.*, CEV Response at p. 9, n.5; Hughes Decl. at ¶¶109-112.

Moreover, the few differences that T-Mobile identifies in '761 Patent Claim 1 do not show that structure is missing. For example, T-Mobile's Reply (pp. 8-9) argues that the '761 Patent "contains nothing more than a temporal requirement that the connection and upload happens 'after' receiving data that allows the determination to happen." T-Mobile's argument actually confirms that Dr Hughes is correct: temporally (i.e., with respect to timing), *if* the correct data inputs are received, *then* the upload *automatically* happens.

T-Mobile's Reply (p. 3, n.4) also points out that '761 Patent Claim 1 does not say the word "conditions." But as Dr. Hughes ¶111 explains, the claim language "automatically connect…and cause an upload" and "after receiving," coupled with a list of required inputs, describes IF/THEN structure in prose. T-Mobile provides no rebuttal to that testimony.

5

### 4. The "determining" operation does not require specialized programming.

As a last ditch effort to persuade the Court that CEV's claims are 112(6), T-Mobile now argues that the "point of novelty" in each claim is "'determin[ing]' whether upload is allowed" (element (f)(ii)(1) in '761 and '472 Patent Claim 1, element (f)(ii)(2) in '472 Patent Claim 5) and that the claims must recite a special controller program for that alleged "point of novelty."[1]

T-Mobile's new argument directly contradicts T-Mobile's Opening Brief and the testimony of its expert. Specifically, T-Mobile and its expert asserted *repeatedly* that *element (f)* in each claim is CEV's "alleged invention." For example, T-Mobile argued:

- "[T]he allegedly inventive elements of each claim, includ[e]: (1) confining automatic uploads of photos to particular periods when there are not potential cellular network access fees or potentially increased cellular network access fees; and (2) automatically connecting to a picture hosting website under the same conditions." T-Mobile Opening Brief, p. 4.

- "Here, there should be no dispute that *the alleged invention is set forth in subsection (f) of the claims*. CEV made that representation to the USPTO and repeatedly distinguished the prior art by *arguing that it did not disclose the elements of subsection (f)*." T-Mobile Opening Brief, p. 5 (emphasis added); *see also*, Wolfe Decl. at ¶89.

As T-Mobile and its expert recognize in the above passages, CEV emphasized that *element (f) as a whole* was novel, and that the "determining" operation is one condition used by element (f).

Indeed, CEV's 10/25/2019 IDS in the '472 Patent, which T-Mobile cites (T-Mobile Reply, p. 6, n.9), clearly stated (Dkt. 42-5 at 17, emphasis added):

"[N]one of the references describes, *as a condition for upload*, that the controller determines 'the upload is allowed because the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface' *and that the controller automatically enables upload of designated photos to the picture hosting service when this condition and the other conditions are met*."

---

[1] *See, e.g.*, T-mobile Reply, p. 3 ("[A] 'controller' alone cannot perform *the alleged point of novelty*—"determin[ing]" if upload is allowed..."); *Id.* at p. 6 (arguing "the determining function" was "the point of novelty"); *Id.* at p. 9 ("[T]he Court does not appear to have considered whether the alleged point of novelty—'determin[ing]' whether upload is allowed—was subject to §112(6)"); *Id.* at p. 8 ("[T]he crux of the invention is the determining function").

Again, CEV described that the "determining" element is a *condition* (that the prior art does not use for upload). CEV further emphasized, as a point of novelty, that "the controller automatically enables upload of designated photos to the picture hosting service *when this condition and the other conditions are met*." Accordingly, there is no merit to T-Mobile's that the "determining" operation in CEV's claims is a point of novelty requiring special programming.

T-Mobile additionally argues that the claims "[do not] specify[] how the determining step is implemented," "recite only an outcome of the determining function," and "recite an outcome of an algorithm." T-Mobile Reply, pp. 3, 5, 6. All of those assertions are wrong, because (1) the claims recite exactly how the determining operation is implemented and (2) the operation does not require a special program or algorithm. CEV Response, pp. 12-13; Hughes Decl. at ¶¶118-21

Using '472 Patent Claim 1 as an example, the condition says "the upload is allowed *because* the system is within one of the periods without potentially increased cellular network access fees, as determined using data from the cellular interface." Either "the system is within one of the periods," or the system is not–it is a binary "yes" or "no," not an algorithm. Hughes Decl. at ¶¶118-21. The claim further specifies "using data from the cellular interface." The recited "cellular interface" is a known structure for providing data about the current period. *Id.* at ¶121. That received data itself thus provides the answer to the "yes" or "no" question. *Id.* at ¶119. If "yes," this condition, one of several required conditions for the automatic upload, is met.

To further emphasize that no algorithm is required for determining "upload is allowed," the claims recite "potential" or "potentially." That language makes clear that the claims do *not* require a calculation of *actual* costs for upload. *Id.* at ¶¶ 66, 76, 217-19. Data from the cellular interface indicates that the current period is one that has the "potential" for fees, or the data indicates that the period does not have the potential. *Id.* No calculation algorithm is required. *Id.*

7

T-Mobile's Reply (pp. 5-6) argues that the claims and specification do not say the word "roaming." However, that argument is irrelevant, because Dr. Hughes's analysis for the roaming example applies equally to any other periods of "potentially increased" or "potential" cellular network access fees. In the claims, the cellular interface structure provides cellular network data. T-Mobile does not deny that existing cellular interfaces provided such data. That received data indicates that either (1) the current period is one that has "potential" or "potentially increased" cellular network access fees, or (2) the current period is not. Hughes Decl. at ¶¶118-21

T-Mobile's Reply (p. 6) also argues: "There is nothing in the claims or the specification that describes how to test for roaming." However, while the claims do not expressly recite "roaming," they nonetheless provide the structure to test for roaming by reciting a known cellular interface that receives known roaming data indicating the "yes" or "no" answer for the controller. Importantly, T-Mobile does not deny that "the specification describes that the claimed controller is integrated into prior art cellular devices that already had the capability to determine roaming status." CEV Response (p. 13), c*iting* Hughes Decl. at ¶¶117-25.

As a last point, T-Mobile's Reply tries to shoehorn step 2 "algorithm" cases into its step 1 argument. However, the question of whether the *specification* discloses an algorithm is irrelevant to whether the *claims* recite sufficient structure to maintain the presumption against 112(6). For example, regarding *Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, 830 F.3d 1341 (Fed. Cir. 2016), T-Mobile's Reply (pp. 6-7) asserts: "without an actual *algorithm* recited, the *claims* did not recite sufficient structure to perform the function." However, T-Mobile mischaracterizes the holding of *Advanced Ground*. There, a very different claim term "symbol *generator*" was §112(6) because the term "does not describe *anything* structural." 830 F.3d at 1348 (emphasis added). Only *after* finding that "symbol generator" was a §112(6) term, the Court analyzed under step 2 whether

8

the *specification* contained an algorithm. *Id.* at 1349. Unlike *Advanced Ground*, CEV's claims recite sufficient structure under step 1, not functional elements like "symbol generator." Similarly, T-Mobile asserts, "Even if only simple programming is necessary, an algorithm is nonetheless required and must be disclosed," citing *EON Corp. IP Holdings LLC v. AT&T Mobility LLC*, 785 F.3d 616, 623 (Fed. Cir. 2015). However, *EON Corp.* held that the *specification* was required to disclose an algorithm for "means for" elements undisputedly subject to §112(6). Again, that holding is irrelevant to whether CEV's *claims* are §112(6).

### B. The specification provides any necessary algorithms for the claimed operations.

Because CEV's claims are not 112(6), there is no need to evaluate if the *specification* discloses algorithms. Moreover, the specification provides any algorithms that would be required. In particular, the specification describes that (1) the system can be programmed with a "set of predetermined conditions" or "rules," and (2) the system is "instructed to automatically initiate a connection to the internet" and "offload" pictures whenever those conditions or rules are met. CEV's Response (pp. 15-16). That description is an IF-THEN algorithm. *Id.*

T-Mobile's (p. 9) only retort is that "[r]epeating some claim language does not provide an algorithm." However, the fact that the specification and claims recite, in prose, the same rules and algorithmic structure simply confirms that (1) the specification *supports* the claims and (2) the claims recite software structure, which is why the claims are *not* 112(6) in the first place.

The remainder of T-Mobile's brief focuses on T-Mobile's new, erroneous argument that the "determining" condition requires an algorithm. It does not require an algorithm.

*First*, T-Mobile's Reply (pp. 8-9) repeats its argument that the "determining" operation was CEV's "point of novelty" which is wrong for the reasons discussed in Subpart I.A.4 above.

*Second*, T-Mobile's Reply (p. 8) argues that "mentioning a potential input…is not an

algorithm," citing *Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*, 732 F.3d 1376, 1381–82 (Fed. Cir. 2013). However, *Ibormeith* is off point, because the claims at issue there recited "computational *means* for *weighting* the operational model … and for *deriving*, from the weighted model, driver or operator sleepiness condition" and "computational *means* for *computing* steering transitions and *weighing* that *computation*." The *Ibormeith* claims were undisputedly directed to a "means" and specialized mathematical processes of "weighting," "deriving," "computing," and "weighing' models, which required a corresponding algorithm. In contrast, CEV's claims do not recite a "means" and do not involve mathematical calculations for "determining," as explained in subpart I.A.4 above. For that reason, no algorithm is required.

*Third*, T-Mobile's Reply (p. 7) oversimplifies CEV's argument as being that "POSA would know how to perform" the operation. However, rather than a bare assertion that a "POSA would know," CEV's Response (p. 17) in fact points out that the disclosure *describes integrating the system with existing cellular phones* that received data from a cell tower (via the cellular interface) indicating if the device is within a "period of potentially increased cellular network access fees." *See, e.g., TecSec, Inc. v. IBM*, 731 F.3d 1336, 1349 (Fed. Cir. 2013) (finding disclosure of existing "software products and how to use those products to implement the claimed functions" is sufficient disclosure of an algorithm).

*Fourth*, T-Mobile's Reply (p. 8) asserts that the claims are not limited to roaming. However, whether limited to roaming or not, the "determining" condition requires no algorithm. The claims use existing cellular interfaces that received data indicating whether the current period is one with any type of "potential" or "potentially increased" fees. CEV Response (p. 17).

## IV. Conclusion

CEV respectfully requests that this Court adopt its constructions and reject T-Mobile's.

Respectfully submitted on April 17, 2025, by:

    /s/ *Justin J. Lesko*

Justin J. Lesko
IL Bar No. 6306428
*Admitted in the Western District of Texas*
Law Offices of Lisa & Lesko, LLC
332 South Michigan Avenue, Suite 900
Chicago, IL 60605
Tel.: (773) 484-3285
JustinLesko@patentit.com

Steven G. Lisa
IL Bar No. 6187348
*Admitted in the Western District of Texas*
Law Offices of Lisa & Lesko, LLC
332 South Michigan Avenue, Suite 900
Chicago, IL 60605
Tel.: (480) 442-0297
SteveLisa@patentit.com

Eamon Kelly
IL Bar No. 6296907
*Admitted in the Western District of Texas*
SPERLING KENNY NACHWALTER
321 N. Clark Street, Suite 2500
Chicago, IL 60654
Tel.: (312) 641-3200
Fax: (312) 641-6492
ekelly@sperlingkenny.com

*Lead Counsel for Plaintiff*

*And*

David N. Deaconson
Texas Card Bar #05673400
Pakis, Giotes, Burleson & Deaconson, P.C.,
The Roosevelt Tower
400 Austin Ave
Waco, TX 76701
(254) 297-7300 Phone
(254) 297-7301 Facsimile
deaconson@pakislaw.com
*Local Counsel for Plaintiff*

11

## CERTIFICATE OF SERVICE

  A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on this the 17th day of April 2025.

                */s/ Justin Lesko*
                Justin Lesko